**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Oscar V.B.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

Civ. No. 26-3984 (JWB/LIB)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Kira Aakre Kelley, Esq., Climate Defense Project, counsel for Petitioner.

David W. Fuller, Esq., and Derek Ganzhorn, Esq., United States Attorney's Office, counsel for federal Respondents.

---

This case presents two related questions: whether federal immigration officers acted within their statutory authority when they arrested Petitioner Oscar V.B. with a warrant, and, if not, whether 8 U.S.C. § 1225(b)(2) nevertheless supplies a lawful basis for his continued detention. The first question turns on whether the arresting officers complied with requirements for a warrant-based arrest of a noncitizen who lacks lawful status. The second requires consideration of the distinct functions Congress assigned to the statutes and the proper scope of habeas relief under § 2241.

Petitioner is a noncitizen who entered the United States without inspection as a

child in 1992. Over three decades later, he was arrested and detained by Immigration and Customs Enforcement ("ICE") agents. At issue is whether his arrest was lawful.

The record establishes that Petitioner was arrested in violation of 8 C.F.R. § 236.1. Whether that violation requires release despite Respondents' reliance on § 1225(b)(2) is a separate question. For the reasons explained below, the provisions are best read to preserve their distinct functions: one governs the authority exercised to arrest Petitioner with a warrant, while the other governs detention following the examination and determination prescribed there. On that reading, Respondents may not continue the present custody initiated through an unauthorized arrest procedure.

**BACKGROUND**

Petitioner is a citizen of Mexico. (Doc. No. 1, Petition ¶ 11; Doc. No. 7-1 at 1–2.) He entered the United States without inspection in 1992, when he was four years old. (Petition ¶ 11.) He was raised in California, and has lived in Tama, Iowa for the last decade. (*Id.* ¶ 13.) He owns a home there and has three U.S. citizen children. (*Id.*) He volunteers regularly doing remodeling and carpentry work for the church and school that his children attend. (*Id.*)

On October 20, 2025, Petitioner was arrested by local law enforcement and detained at the Tama County Jail on charges for domestic abuse assault. (Petition ¶ 14; Doc. No. 7-1 at 2.) While he was held in local custody, he was interviewed and a Form I-247A immigration detainer was placed on him based on either statements made by Petitioner or other reliable evidence that indicated he either lacked immigration status or is removable under U.S. Immigration law. (Petition ¶ 14; Doc. No. 7-1 at 2; Doc. No.

7-3.) A different immigration officer issued a Form I-200 warrant for Petitioner's arrest, citing the same bases. (Doc. No. 7-2.) Both documents are dated October 20, 2025, but do not include a time. (Doc. No. 7-3; Doc. No. 7-2.)

Petitioner pled to a simple misdemeanor on the state charge and was ordered released. (Petition ¶ 14.) State authorities continued to hold him in custody for another night, however, based on the detainer. (*Id.*)

On October 22, 2025, ICE agents arrested Petitioner from state custody. (*Id.* ¶ 15; Doc. No. 7-1 at 1–2 (listing time of apprehension as 10:17 a.m.) Petitioner alleges that he does not remember whether he was shown a warrant during his immigration arrest. (Petition ¶ 16.) Respondents' records indicate that they served Petitioner with the I-200 warrant on October 22, 2025, in Toledo, Iowa, where the Tama County Jail is located, and the warrant's contents were read to Petitioner in English. (Doc. No. 7-2.) After the arrest, Petitioner was taken to an ICE office in Cedar Rapids, Iowa. (Doc. No. 7-1 at 2.) Petitioner alleges he was later transported to another jail in Iowa, and then to the Freeborn County Adult Detention Center in Albert Lea, Minnesota. (Petition ¶ 15.)

Petitioner was issued a Form I-862 Notice to Appear ("NTA"), charging him as being present without admission or parole and lacking a valid entry document. (Doc. No. 7-4 at 1, 4.) The NTA is dated October 22, 2025, and signed in two places, but it does not include a time. (*Id.*) It also indicates that it was served on October 22, 2025, but the Certificate of Service does not include a time or location of service. (*Id.* at 2.) The first page indicates that it was signed by the Issuing Officer in Cedar Rapids, Iowa, and states that Petitioner is "currently residing" in ICE custody at 1717 Ave. H in Omaha,

Nebraska. (*Id.* at 1.)

Petitioner asserts that he has an appeal pending with the Board of Immigration Appeals and that he does not have a final order of removal. (Petition ¶ 12.)

Petitioner remains in custody at the Freeborn County Adult Detention Center. (*Id.* ¶ 15.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims his detention without a bond hearing violates Due Process. (*Id.* ¶¶ 20–24, 43–50.) He also claims his arrest violates the Fourth Amendment because he was not arrested in accordance with the governing law. (*Id.* ¶¶ 25–42, 51–53; *see also* Doc. No. 8 at 3–4.)[1]

Petitioner challenges only the lawfulness of his present detention. He does not

[1] Respondents argue that the entire Petition should be denied because it was signed by Petitioner's counsel. (Doc. No. 6 at 2–3.) The argument is rejected because someone acting on the petitioner's behalf may sign and verify the petition. 28 U.S.C. § 2242. Doing so is particularly useful for managing the urgency and logistical difficulties of ICE detention. *See, e.g.*, *Franklin P.C.S. v. Blanche*, Civ. No. 26-3887 (JRT/EMB), 2026 WL 2687548, at *2 n.3 (D. Minn. Sept. 14, 2026); *Vu V.L. v. Mullin*, Civ. No. 26-2947 (LMP/JFD), 2026 WL 1893611, at *3–4 (D. Minn. July 1, 2026).

contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II. Analysis

### A. Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). That means any failure to abide by the governing statutes and regulations represents taking action without lawful authority to do so. Accordingly, Petitioner's claim asks whether Respondents acted under the authority conferred to them by Congress.

Federal statutes dictate when it is proper to arrest a noncitizen during the removal process. *See Arizona v. United States*, 567 U.S. 387, 407 (2012). The Immigration and Nationality Act provides two mechanisms for arresting a noncitizen prior to a final removal order. One is to arrest with a warrant under the authority in 8 U.S.C. § 1226(a); the other is to arrest without a warrant under more limited authority in 8 U.S.C. § 1357. *See id.* at 408.

Petitioner argues that his arrest was unlawful because the warrant was issued and served prior to the NTA, rendering it invalid, and the NTA was issued after he was

already in ICE custody. He points to 8 C.F.R. § 236.1 and a case from this District for support.

Respondents do not engage with Petitioner's invalid arrest argument other than to simply state that "Petitioner was served a warrant." (Doc. No. 6 at 20.)

A valid Form I-200 authorizes the arrest of a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The timing matters because an NTA initiates the removal proceeding for which the Form I-200 authorizes arrest. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (recognizing that an NTA "serves as the basis for commencing a grave legal proceeding"). Therefore, a lawful warrant-based arrest stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

Here, the record does not show that Petitioner's NTA was issued at or before the time that he was arrested on the I-200 warrant. There is no time stamp on the NTA. There is no affidavit from the issuing officer. The document itself is dated October 22, 2025, and states that Petitioner was "currently residing . . . in ICE custody" in Omaha, Nebraska. (Doc. No. 7-4 at 1.) The NTA itself therefore indicates that Petitioner had already been arrested before it was issued. Accordingly, the record shows by a preponderance that the NTA was issued after Petitioner was arrested, in violation of the applicable regulation.

ICE cannot retroactively legalize Petitioner's arrest and detention by generating a

charging document after conducting a warrant-based arrest. Accepting such a post-hoc fix would effectively permit ICE to grant itself authority that it has not been given by existing statutes or regulations. Respondents also do not point to any authority authorizing a prior arrest that was made contrary to the governing statute and regulations. This Court will not manufacture that authorization for them. Accordingly, Petitioner's warrant-based arrest was unlawful.

**B. Remedy**

The remaining question is the consequence of the unlawful arrest. Respondents contend that Petitioner is now properly subject to mandatory detention under § 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an unauthorized arrest.

**1. Release preserves the statutory text and structure**

Under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), a noncitizen in Petitioner's circumstances falls within § 1225(b)(2)(A) and, after the determination prescribed there, is subject to mandatory detention during removal proceedings. *Avila* did not decide the source or limits of the Government's authority to make a warrant-based arrest. Thus, accepting that § 1225(b)(2)(A) applies to Petitioner does not answer whether Respondents may continue custody obtained through an arrest that violated the law.

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL

2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v. Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Rules of statutory construction apply. The statutory text itself marks the analytical starting point. Related statutory provisions should be read so each retains operative effect. *See Corley v. United States*, 556 U.S. 303, 314 (2009); *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Where a specific provision addresses the particular governmental authority at issue, it ordinarily governs over a more general provision that might otherwise be read to reach the same subject. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting *Morton*, 417 U.S. at 550–51).

Applying those principles to §§ 1226(a) and 1225 serves to harmonize their distinct but complementary purposes. Section 1226(a) and its implementing regulations specifically govern the authority exercised here—the power to arrest a noncitizen with a warrant—and they condition exercise of that authority on properly issuing a warrant and executing it and an NTA in the proper sequence. Section 1225(b)(2)(A), by contrast, addresses what follows after inspection of an applicant for admission: if an examining immigration officer determines that an applicant is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for a removal proceeding under

§ 1229a. That provision says nothing about warrant-based arrest authority.

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest would substantially diminish the legal and regulatory limits placed on warrant-based arrests. A warrant must be based on probable cause and generally permits an arrest only once an NTA is issued. Yet under Respondents' reading, ICE could arrest a noncitizen and even wholly ignore those requirements, conduct the § 1225 inspection made possible by that arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass the rules for making a warrant-based arrest.

The provisions can instead be given full effect according to the different subjects they address. Section 1226 governs whether ICE may take a noncitizen into custody in the interior with a warrant. Section 1225(b)(2)(A) addresses what follows after examination: if an examining immigration officer determines that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for removal proceedings. *Avila* requires enforcement of that detention command, but it does not hold that § 1225 supplies authority for the arrest that precedes it. Giving effect to specific limits on that arrest therefore does not diminish § 1225 or conflict with *Avila*; it gives effect to both provisions as written.

The question, then, is not whether § 1225 "cures" the defective arrest. It does not make the arrest lawful. The question is whether § 1225 independently authorizes continuation of the same custody even though the Government lacked statutory authority to initiate that custody through the arrest it chose to make. The statutory text provides no

basis for treating the post-arrest detention directive as an independent authorization for custody obtained through an arrest subject to express limitations.

This conclusion does not treat Petitioner's current confinement as "poisonous fruit" or hold that every earlier wrongful arrest necessarily invalidates later custody. It rests on the narrower relationship between these provisions. Respondents used the warrant-based arrest authority supplied by § 1226 to take Petitioner into custody, and § 1225 contains no independent grant of arrest authority. The later § 1225 determination may remain valid for the purposes that provision serves, but it does not retrospectively supply the authority that was absent when this custody began.

Accordingly, § 1225(b)(2)(A) does not independently sustain Petitioner's present custody that began with an arrest unauthorized by § 1226(a) and its implementing regulations.

### 2. *Bilokumsky* and later proceedings

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a

subsequent deportation proceeding.[2]

The *Bilokumsky* principle, however, does not resolve this case. *Bilokumsky* establishes that an unlawful original arrest does not invariably require habeas release when sufficient lawful grounds for detention subsequently exist. The unresolved question here is whether § 1225(b)(2)(A) supplies that "sufficient ground" where Petitioner remains in the same custody acquired through an interior warrant-based arrest for which § 1226 and § 236.1 specifically supplied—and limited—the Government's authority.

The statutory scheme here answers that narrower question. As explained above, the examination contemplated by § 1225 may determine whether detention is required, but it does not provide a separate basis for maintaining the same uninterrupted custody when the statutory authority required to initiate that custody was absent. Giving § 1225 that effect reads § 1226 and § 236.1's arrest requirements out of the scheme. That is why § 1225 is not the "sufficient ground" contemplated by *Bilokumsky* for Petitioner's custody.

Nor does release invalidate or alter Petitioner's removal proceeding. *Lopez-Mendoza* teaches that the legality of an arrest does not itself determine removability and that an unlawful arrest does not necessarily invalidate the ensuing immigration proceeding. 468 U.S. at 1039–40. Petitioner does not ask to terminate the removal case,

[2] In *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975), the Supreme Court observed that it has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." But *Gerstein* relates to criminal arrests, not administrative immigration arrests. And Respondents *did* secure a warrant here, but they executed it in violation of the governing requirements. As explained above, allowing the ensuing detention to cure that violation renders the arrest requirements meaningless.

suppress evidence in it, or otherwise alter the merits of the removability inquiry. That proceeding may continue notwithstanding the relief ordered here. *See* 8 C.F.R. § 1003.19(d) (recognizing that custody determinations are "separate and apart from, and shall form no part of" a removal proceeding).

The distinction is therefore between the Government's authority to pursue removal and its authority to maintain Petitioner's present physical custody. The former is unaffected. The latter depends on the statutes governing arrest and detention, read together according to their distinct functions. Because the arrest through which Respondents acquired custody was not authorized, and § 1225 does not independently authorize continuation of that custody, Petitioner is entitled to release.

**3. Conclusion**

The appropriate habeas remedy is release from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That relief is narrow. It terminates the detention initiated through an unauthorized arrest under the provisions specifically enacted to govern the seizure at issue. It does not invalidate § 1225, terminate the removal proceedings, or preclude Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1. Petitioner Oscar V.B.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must immediately release Petitioner from custody.

3. When Petitioner is released:

   a. **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

   b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

   c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

   d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents'

compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

4. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: October 20, 2026
Time: 1:17 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge